1  TANYA M. SCHIERLING [SBN 206984]
   tschierling@swsslaw.com
2  SOLOMON WARD SEIDENWURM & SMITH, LLP
   401 B Street, Suite 1200
3  San Diego, California 92101
   (t) 619.231.0303
4  (f) 619.231.4755

5  Attorneys for Plaintiff
   SHANE MACEDO

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE MACEDO, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CBRE, Inc., a Delaware corporation; and DOES 1 through 10, inclusive.<br><br>　　　　Defendants. | Case No. **'25CV1400 CAB DEB**<br><br>**COMPLAINT FOR:**<br><br>1) BREACH OF CONTRACT<br>2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING<br>3) FAILURE TO TIMELY PAY WAGES OWED<br>4) FAILURE TO PAY MINIMUM WAGE<br>5) FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS<br>6) CONVERSION<br>7) UNFAIR BUSINESS PRACTICES<br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiff SHANE MACEDO ("**Plaintiff**" or "**Macedo**") alleges as follows:

## NATURE OF THE DISPUTE

1. Macedo is a real estate broker who worked for Defendant CBRE, Inc. ("**Defendant**" or "**CBRE**") in La Jolla, California for over seven years, until the end of December 2024. Macedo is entitled to be paid by CBRE for his work, including, without limitation, substantial broker commissions on transactions in progress at the time he separated from employment with CBRE. Despite demand, CBRE has failed and refused to pay Macedo.

## PARTIES

2. Macedo is a natural person who, at all times relevant to this complaint, has resided and continues to reside in the state of California, County of San Diego.

3. Macedo is informed and believes, and based on such information and belief alleges that CBRE is a Delaware corporation that does business in the state of California and the County of San Diego.

## JURISDICTION AND VENUE

4. The Court has jurisdiction under 28 U.S.C. section 1332 because this is a dispute between a citizen of a state and a citizen of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue in this judicial district is proper under 28 U.S.C. section 1391, including, without limitation, because the written agreements at issue in this dispute call for substantial performance in this judicial district; Macedo worked for CBRE in this judicial district; and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTS

6. CBRE and Macedo are parties to that certain written Broker-Salesperson Contract (Qualified Real Estate Agent – QREA – California) dated effective July 10, 2017, a copy of which is attached hereto as **Exhibit A** and incorporated by this reference ("**Agreement**"). Macedo is referred to as

COMPLAINT

"Salesperson" in the Employment Agreement. The Agreement provides, *inter alia*, that CBRE's General Rules and Policies in effect as of the date of the Agreement, and any modifications, additions or amendments thereto (collectively, "**CBRE's Policies**") shall be binding on CBRE and Salesperson. Ex. A, Agreement, § 3.

7. The sole form of compensation that CBRE purported to obligate itself to pay Macedo for the work he performed for CBRE was a commission on real estate transactions (sales and leases) in which Macedo participated. To that end, the Agreement provides that "Commissions shall be paid to Salesperson in accordance with the provisions of CBRE's Policies."

8. Macedo resigned from CBRE effective December 31, 2024.

**Macedo Was An Employee of CBRE**

9. Macedo was an employee of CBRE. The Agreement expressly states that CBRE "hereby employs [Macedo] as a real estate salesperson." Additional terms of the Agreement, and the measures of control CBRE imposed pursuant to it, confirm the employer-employee relationship.

10. The parties did agree, however, that, ***for tax purposes only***, Macedo would not be deemed an "employee." Agreement, section 19.

11. California law permits real estate agents to be engaged either as employees or on an independent contractor basis. *See* Lab. Code section 2778; Bus. & Prof. Code section 10032.[1] However, in order to qualify for independent contractor status under California law, certain requirements must be met.

12. Under California law, the test set forth in Unemployment Insurance Code sections 650 and 13004.1 determines the employee or independent contractor status of a real estate agent. Bus. & Prof. Code § 10032(b); *see also Whitlach v. Premier Valley, Inc.* (2022) 86 Cal. App. 5th 673. That test requires, *inter alia*, that

---

[1] Whether federal law permits treating real estate agents as independent contractors is an open and undecided question following the "New Rule" promulgated by the Department of Labor effective March 11, 2024, which requires examining the "totality of circumstances." *See* 29 C.F.R. § 795.110.

substantially all of the compensation for services must be directly related to sales or output and not number of hours worked. Unemp. Ins. Code §§ 650(b), 13004.1(b); *Whitlach*, supra.

**CBRE Has Failed to Pay All Commissions (and Wages) Due to Macedo**

13. During his employment by CBRE, the sole form of compensation that Macedo received was commissions.

14. Macedo is informed and believes, and on that basis alleges, that, for each transaction in which he participated that generated a commission, CBRE retained a percentage of the gross commission.

15. Macedo is further informed and believes, and on that basis alleges, that, except for the transactions at issue in this dispute, CBRE paid the remaining balance of the gross commission on each such transaction to the team members who originated and/or participated in the transaction at issue, including Macedo and his team member, Andrew Huggett, based on a percentage split.

16. In accordance with CBRE's Policies, upon Macedo's resignation, CBRE was obligated to pay him a percentage of commissions on transactions in progress.

17. To give effect to CBRE's agreement and obligation to pay commissions to Macedo on transactions in which he participated that are anticipated to close after his separation, on or about December 17, 2024, Macedo provided CBRE with a hurried and incomplete list of transactions in progress ("**TIP**" or "**TIP List**"). The TIP List identified some, but not all, of the transactions on which Macedo was due a commission. Macedo is informed and believes that additional transactions on which he worked were closed "confidentially" prior to his separation for the express purpose of concealing them from him and deterring him from pursuing his rightful commission.

18. CBRE has failed and refused to pay Macedo a commission on the transactions on the TIP List. It has also failed and refused to pay Macedo *at all* for

the hours he spent working on the transactions on the TIP List.

19. The law does not permit CBRE to have its cake and eat it too. It cannot limit Macedo's compensation for work performed solely to commissions and then refuse to pay him those commissions.

**This Court Is the Appropriate Forum to Resolve Macedo's Claims**

20. The Agreement provides for arbitration of disputes. Ex. A, Agreement, § 18.

21. Accordingly, on or about March 3, 2025, Macedo filed a Demand for Arbitration for recovery of his unpaid wages and commissions.

22. However, on or about May 14, 2025, CBRE asserted that the Arbitrator lacks jurisdiction even to consider Macedo's claims. CBRE cited to Section 11 of the Agreement, which, CBRE contends, allegedly gives CBRE the sole and binding jurisdiction and authority to decide an employee's compensation claims against CBRE, such that the Arbitrator has no such jurisdiction or authority.

23. CBRE asserted that, instead, the Arbitrator must dismiss Macedo's claims outright without allowing any discovery or receiving any evidence. CBRE contends that only CBRE can decide Macedo's commission and wage claims and in all events not an Arbitrator pursuant to the arbitration provision of the Agreement.

24. The parties did not clearly and unmistakably delegate to the Arbitrator the authority or jurisdiction to determine the arbitrability of any claims and Macedo does not agree to do so.

25. Rather than waste time and expense in a proceeding that CBRE contends lacks jurisdiction, Macedo has dismissed the arbitration proceedings and instead filed this Complaint.

**FIRST CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

26. Plaintiff realleges and incorporates here by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully

set forth herein.

27. Macedo and CBRE entered into a valid and binding written agreement pursuant to which CBRE agreed to pay commissions to Macedo in accordance with CBRE's Policies.[2]

28. Macedo has performed all of his duties arising from or related to the parties' contract or has been excused from such performance.

29. CBRE breached the parties' contract by failing and refusing to pay Macedo commissions on the Pending Transactions.

30. As a direct and proximate result of CBRE's breaches of the parties' contract, Macedo has been harmed in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
## BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

31. Plaintiff realleges and incorporates here by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

32. Macedo and CBRE entered into a valid and binding written agreement pursuant to which CBRE agreed to pay commissions to Macedo in accordance with CBRE's Policies.[3]

33. Macedo has performed all of his duties arising from or related to the parties' contract or has been excused from such performance.

34. CBRE has unfairly and unreasonably interfered with Macedo's right to receive the benefit of the parties' contract, specifically, commissions on transactions in which he participated, by, inter alia, purporting to rely on an invalid and

---

[2] Not all of the terms of the Agreement are valid and binding, however. Certain terms of the Agreement, such as, for example, section 11, are invalid and unenforceable.

[3] *See* footnote 2, *supra*.

unenforceable provisions (such as, for example, section 11 of the Agreement) to refuse to pay Macedo *at all* for work he performed on the Pending Transactions.

35. CBRE's unfair and unreasonable interference with Macedo's right to receive the benefit of the parties' contract has harmed Macedo in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
## FAILURE TO TIMELY PAY WAGES OWED
## LABOR CODE §§ 201, 202, 203, 204

36. Plaintiff realleges and incorporates here by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

37. California Labor Code section 204 requires:

> All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

38. From approximately January 1, 2023 through December 31, 2024, Macedo performed work for CBRE on transactions that, at the time of his resignation, had not yet closed or generated a commission (collectively, "**Pending Transactions**").

39. CBRE failed to timely pay Macedo for his hours work on the Pending Transactions.

40. CBRE also failed and refused to pay Macedo any commissions on the Pending Transactions as required by CBRE's Policies.

41. Additionally, Labor Code sections 201 and 202 require the payment of wages, without abatement or reduction, by an employer to an employee at the conclusion of the employment relationship. Pursuant to Labor Code section 203, wages which are unpaid at the time of discharge will continue as a penalty from the due date thereof, at the same rate, until paid or until an action therefore is commenced, for up to 30 days.

42. From and after Macedo's resignation, CBRE has failed and refused to pay him all wages due and owing.

43. In addition to wages owing for work performed on the Pending Transactions, Macedo is also entitled to penalties pursuant to Labor Code section 203, which provides that an employee's wages shall continue as a penalty until paid for a period of up to thirty (30) days from the time they were due.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO PAY MINIMUM WAGES
## LABOR CODE §§ 1194, 1194.2, 1197, WAGE ORDER NO. No. 4-2001

44. Plaintiff realleges and incorporates here by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

45. Labor Code section 1197 makes it unlawful to pay an employee less than the minimum wage, as established by the Industrial Welfare Commission, for each hour worked.

46. Labor Code section 1194 entitles an employee receiving less than the minimum wage to recover, in a civil action, the unpaid balance of minimum wages owing, plus interest thereon, reasonable attorneys' fees, and costs of suit.

47. Labor Code section 1194.2 also entitles an employee receiving less than the minimum wage to recover, in addition to the minimum wage itself, liquidated damages in an amount equal to the unpaid minimum wages and interest thereon.

48. In violation of Labor Code section 1197, CBRE failed to pay Macedo minimum wages during the period of January 1, 2023 through December 31, 2024 for work he performed on the Pending Transactions.

## FIFTH CLAIM FOR RELIEF

## FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS

## LABOR CODE § 226

49. Plaintiff realleges and incorporates here by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

50. Section 226(a) of the California Labor Code requires CBRE to "semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages . . . an accurate itemized wage statement in writing showing," among other things, "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

51. For the period of January 1, 2023 through December 31, 2024, CBRE failed to provide Macedo accurate itemized wage statements.

52. Plaintiff seeks to recover the penalty provided by Labor Code section 226(e).

## SIXTH CLAIM FOR RELIEF

## CONVERSION

53. Plaintiff realleges and incorporates here by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

54. Based on the facts set forth in this Complaint, CBRE is in wrongful possession of commissions paid on transactions in which Macedo participated, which commissions are due and owing to Macedo.

///

# SEVENTH CLAIM FOR RELIEF
# UNFAIR BUSINESS PRACTICES
# BUSINESS & PROFESSIONS CODE § 17200

55. Plaintiff realleges and incorporates here by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

56. CBRE's conduct alleged herein has been and continues to be unfair, unlawful, and harmful to Macedo and the general public. Macedo seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

57. CBRE's actions alleged herein are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code section 17200, et seq.

58. A violation of California Business & Professions Code section 17200, *et seq*. may be predicated on the violation of any state or federal law.

59. CBRE's policies and practices of refusing to pay commissions while also failing to timely pay all wages owing, failing to pay minimum wages and failing to provide accurate itemized wage statements violate the California Labor Code as set forth above.

60. CBRE's unfair business practices have reaped unfair benefits and illegal profits at Macedo's expense including but not necessarily limited to the loss of money or property.

61. Pursuant to California Business & Professions Code section 17200, *et seq.,* Macedo is entitled to relief including accounting for and restitution of the wages and other sums unlawfully obtained and unlawful withheld and retained by CBRE an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws, and an award of costs.

///

## PRAYER FOR RELIEF

Macedo seeks an award in his favor against CBRE as follows:

1. For unpaid wages pursuant to applicable California Labor Code provisions;

2. For liquidated damages for failure to pay minimum wages;

3. For waiting time penalties;

4. For all commissions paid to CBRE (past or future) on transactions on which Macedo worked, after deducting CBRE's share of such commission, an amount equal to 50% of the balance of such commissions;

5. For an order requiring an accounting and restitution of all monies unlawfully obtained, withheld and retained by CBRE as a result of its unlawful and unfair business practices;

6. For prejudgment and post-judgment interest;

7. For costs of suit;

8. For recovery of his attorneys' fees and costs in accordance with governing California law; and

9. For such other and further relief as the Court deems just and proper.

DATED:  June 3, 2025            SOLOMON WARD SEIDENWURM & SMITH, LLP

By:     /s/ Tanya M. Schierling
TANYA M. SCHIERLING
Attorneys for Plaintiff
SHANE MACEDO

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: June 3, 2025

SOLOMON WARD SEIDENWURM & SMITH, LLP

By: _____*/s/ Tanya M. Schierling*_____
TANYA M. SCHIERLING
Attorneys for Plaintiff
SHANE MACEDO